**WASSERMAN**
v.
**BURGESS & BLACHER CO.**
Civ. No. 52–1078.

United States District Court
D. Massachusetts.
March 11, 1954.

Ezekiel Wolf, Boston, Mass., for plaintiff.

Arthur D. Thomson, Thomson & Thomson, Boston, Mass., for defendant.

SWEENEY, Chief Judge.

This is an action for patent infringement brought by Max Wasserman, as owner of United States Letters Patent No. 2,610,593, against Burgess & Blacher Co., a Massachusetts corporation having a place of business at Roxbury, Massachusetts.

## Findings of Fact

The defendant denies infringement and asserts that the patent in question is invalid both for want of invention and for want of novelty. The plaintiff's patent is comprised of five claims, all of which are alleged to have been infringed with the exception of Claim No. 4. A typical claim in issue reads as follows:

"1. A covering for a sky light opening having a sill framing the sky light opening, a metallic frame extending all around the sill on the top edge thereof with an outwardly projecting flange all around the sky light opening, means extending downwardly from the inner edge of the frame for securing the metallic frame to said sill, a plastic dome member having a base flange co-extensive with said outwardly projecting metallic flange all around the sky light opening, and means for clamping said flanges together including a plurality of spaced bolts passing through aligned holes in the flange of the plastic dome and said metal flange, the holes in the plastic dome being slightly larger in diameter than the bolts which pass through them, providing fitting and expansion tolerances."

An examination of the cross-sectional drawing of the plaintiff's construction shows a basic square metal frame with a top and two sides which fits over the wooden curbing of the roof opening. The inner side or flange of the frame extends slightly above the level on which the top side of the frame joins the outer side, so as to provide a condensation gutter. Means for fastening the construction to the sill are provided on this inner side of the frame at a point below the condensation gutter where a spike or screw passes through the frame into the sill. The outer side of the frame extends downwardly somewhat further than the inner side, so as to completely cover the exposed portion of the sill and act as weatherproofing. The top or covering member of the frame joins both sides and then continues outwardly on a horizontal plane to form a marginal flange. On top of this basic frame there is set an elliptic plastic dome with an outwardly projecting base flange co-extensive with the horizontal flange of the frame. The dome and frame are joined on these flanges by passing bolts through aligned holes in them, care being taken that the holes in the plastic dome are slightly larger in diameter than the bolts so as to allow for expansion and contraction.

It appears further that a sealing gasket is interposed between the flanges in the sections where the fastening bolts are located, but it is omitted at the corners of the structure.

The plaintiff contends that this form of construction makes for a completely watertight unit which may be prefabricated to fit any shape or size of skylight opening and thereafter installed with ease in the field.

From a comparison of the plaintiff's unit and the allegedly infringing device manufactured by the defendant it appears that there is substantial identity between them, save for minor modifications, notable among which is the fact that in the defendant's skylight the marginal co-extensive flanges have been creased along their outer borders and bent down to form a depending skirt or lip where the clamping members are present.

We need not decide whether this modification or any others which may exist are sufficient in scope to negate any claim of infringement here, since in this Court's view the patent in suit must be declared invalid for want of invention, thereby making it unnecessary for us to pass on to a consideration of the question of infringement or non-infringement.

I believe that practically every element in the plaintiff's patent was taken directly from the prior art and those that were not (if there are any) were either suggested by the prior art or else were devised by the patentee as unstartling routine solutions to problems incident to the use of the materials incorporated in the plaintiff's patent.

In other words, once plastic with its known properties became accepted by the art as a skylight material, then the plaintiff, well aware of these properties, reached out and selected from the store of the prior art other well known skylight construction elements and incorporated them into an overall unit which solved the major problems of the trade in the way they had been solved before, while at the same time allowing for the action of a new material.

Prior to the date of the alleged invention, which occurred sometime in 1950, plexiglas domes with marginal flanges had been known to and used by the trade in skylight construction for at least three years. Evidence of such knowledge and use cited by the defendant includes:

(a) Defendant's Exhibit B, a photostat of page 124 of the Architectural Forum Magazine for October, 1947, showing the use of this type dome in a skylight construction.

(b) Defendant's Exhibit C, a photograph of plexiglas skylights actually installed in a private home in Lexington, Massachusetts, in 1948.

(c) Defendant's Exhibits F and G which comprise invoices and factory orders and a photograph, evidencing two sales by a local corporation of the type dome under consideration.

It is correct to state therefore that the use by the plaintiff of a preformed plastic dome-shaped cover does *not* by itself amount to an innovation or constitute invention, nor do we understand the plaintiff to make such a claim.

Further, the provision of oversize holes in the plastic material to allow for expansion and contraction and the use of a gasket to reduce vibration and to act as waterproofing were taught as early as 1947, as is seen from the passage in Modern Plastics Encyclopedia, page 1121, read into the record at the trial by Professor Dietz. These principles suggested in the above passage were actually applied to plastic skylight domes.

Condensation gutters formed interior of the covering dome of a skylight by means of a flange are old to the art as is seen in the following references cited by the defendant: Snead Patent No. 106,967; Howard Patent No. 191,802; Defendant's Exhibit A, blueprint of detail of skylight constructed for Farina Brothers; Defendant's Exhibit B, supra; the blueprint of the details for a skylight installed in the Fitchburg Youth Library, Fitchburg, Massachusetts, constituting part of Defendant's Exhibit G. In at least three instances this flange was part of a framing element or element substantially equivalent to a frame, i. e., in the Snead Patent, in Defendant's Exhibit B, and Defendant's Exhibit G.

The use of a square tubular casing or frame to fit the sill of an aperture in the roof of a house does not standing alone add anything to the art of skylight construction, and in at least one reference cited by the defendant such a frame was employed to support a superstructure whose function was protective, i. e., Hoffland Patent No. 1,563,706, for a Chimney Protector.

Furthermore, the disclosures in Hayes Patent No. 295,167, Dixon Patent No. 1,033,161, Schalkenbach Patent No. 805,383, and in the Defendant's Exhibit A of bending a flange around the sill of the opening to act as support for the covering member, perform the same function as a supporting frame and are so similar thereto as to teach the use of such a frame to a skilled mechanic or artisan in this field.

In these disclosures the supporting flange has a top portion and a downwardly extending member or members fitting inside or outside of the curb or both, depending upon the particular reference.

None of the various references cited by the defendant discloses in exactly the same form a marginal outwardly extending flange on the frame positioned to meet the flange of the dome. However, this usage is present in the prior art in a modified form, and on recourse thereto would suggest itself to one using a dome made of plastic.

For example, Hayes utilizes an outwardly extending member on its supporting flange which first runs horizontally, then is bent upward and terminates in a slight V-shaped arm. The covering sash sets into the curb formed by this segment of the flange and is thereby retained in place. This construction results in an overhang or eaves effect allowing the water to run off the slanted sides of the skylight without entering the interior.

This same overhang effect is present in the patent under consideration except that no vertical arm or arms are provided on the horizontal flange; this being so of necessity in order to prevent any binding effect on the plastic material which has a high coefficient of expansion and contraction. A similar overhang is found in Hoffland which is achieved by lateral portions of the frame.

The considerations which led to the plaintiff's adoption of co-extensive outwardly extending flanges where the bolting means are present are obvious in the light of previous uses of the same type plastic dome by others.

In these previous constructions the dome was fastened directly to the curbing, and as a result water seeped into the oversize holes in the plastic (made to allow for expansion and contraction) and eventually found its way into the interior of the building. To eliminate this source of leakage the plaintiff adopted the expedient of locating the fastening means on flanges exterior to and outside of the curb of the skylight opening, with the result that any leakage which occurs simply drops free on the outside where it will do no damage. This expedient, satisfactory and useful as it is, still appears to be the type of solution which one might expect from the ordinary skilled mechanic and does not rise to the dignity of invention.

Conclusions of Law

From the foregoing I conclude and rule that the plaintiff's patent is an assemblage of old elements, which involves only an exercise of the mechanical skill to be expected of persons familiar with the prior art and the problems involved in skylight construction, and that although the device under consideration is a clever and convenient unit it does not amount to invention. See Great Atlantic and Pacific Tea Company v. Supermarket Equipment Corporation, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; McCord Corporation v. Beacon Auto Radiator Co., Inc., 1 Cir., 193 F.2d 985; Associated Folding Box Co., Inc., v. Levkoff, 1 Cir., 194 F.2d 252; Robinson Aviation, Inc., v. Barry Corporation, D.C., 106 F.Supp. 514. The fact that it lends itself to prefabrication does not in my mind change this result.