Bierman & Bierman, New York City, Jordan Bierman, New York City, of counsel, for plaintiff.

I. Jordan Kunik, New York City, for defendant.

**COMPTONE CO., Ltd., Plaintiff,**

v.

**OPTI-RAY, INC., Defendant.**

**Civ. A. No. 18616.**

United States District Court
E. D. New York.

Sept. 13, 1962.

ROSLING, District Judge.

Judgment in favor of the defendant Opti-Ray, Inc. (Opti-Ray) is decreed, declaring claims 3 and 4 of Patent No. 2,816,666 and claims 3 to 9 inclusive of Reissue Patent No. 24,571, issued to Manuel R. Nadel, assignor of plaintiff, Comptone Co., Ltd. (Comptone), invalid for want of invention; and dismissing complaint insofar as it charges infringement of said claims. In respect of claims 1 and 2 of said Patents, as to which plaintiff upon trial withdrew its charge of infringement and which were, accordingly, not the subject of proof, complaint is dismissed without prejudice and without adjudication of validity of said patents except to the extent involved in the invalidation of such other claims.

Costs and disbursements are awarded to defendant. Attorney fees prayed for by defendant are disallowed.

The complaint charges defendant with infringing Patent No. 2,816,666 and Reissue Patent No. 24,571, issued to Manuel R. Nadel as assignor to plaintiff. Nadel is president and organizer of Comptone. The "invention" is a display device alleged in four claims recited in both the original and reissue patents, and in five additional claims in the reissue patent, to constitute an improvement on the prior art. Upon the trial plaintiff stipulated that it did "not claim infringement based upon the display stand which constitutes claims 1 and 2." This was in conformity with plaintiff's limiting pretrial answer to defendant's interrogatories that "Plaintiff charges infringement of claims 3 to 9 of Reissue Patent No. 24,571; and claims 3 to 5 [1] of Patent No. 2,816,666." Defendant further conceded upon the trial that the accused device which it marketed was, if plaintiff's patents were held valid, in infringement thereof.

The claims in controversy may be summarized in the language of plaintiff's trial memorandum as consisting "in a novel and original form of display device for sunglasses. Specifically it concerns a large card intended to hold a plurality of pairs of glasses, which contains a series of 'bubbles' generally rectangular in shape with an opening at the outer edge. The front faces of the bubbles may be indented in whole or in part in order to assist in retaining the glasses in an upright position. However, it is not essential that this feature be present."

Plaintiff proffers its fourth claim as typical of those in suit.[2] Defendant cites the fifth [3] (first of the expanded claims set forth in the reissue patent) as representing their broadest reach, and maintains that if the invalidity of such fifth claim were established, a like determination of the invalidity of all the others in issue would be compelled. But it is of no moment whether plaintiff's or defendant's selection of a claim as pivotal be accepted, for the court finds here no significant advance over the prior art,[4] no

1. Claim 4 obviously intended, as there is no claim 5 in the patent cited.

2. "4. A display card for eyeglasses, said card having a stiff backing sheet, at least one sheet of flexible transparent sheet material attached to a face of the backing sheet, said sheet material being outwardly distorted at uniformly-spaced locations to provide a vertical series of merchandise-holding pockets between it and the backing sheet, each of said pockets having an imperforate front wall, upper and lower walls and end walls, the front wall having an elongated inwardly-extending bulge inwardly of the marginal edge thereof resulting in an inward protuberance within the pocket and inwardly beyond the plane of the front wall to stiffen the front walls of the pocket, each pocket being of a shape and size to loosely and removably accommodate a pair of eyeglasses within it, the protuberance reducing the depth of the pocket to an extent to engage and maintain the eyeglasses upright and on edge within it, one of the end walls having an opening through which the eyeglasses can be passed to insert them into or remove them from the pocket, said end wall being slanted to facilitate entrance of the fingers to engage the eyeglasses."

3. "A display device for eyeglasses, consisting of a flat backing sheet of relatively stiff cardboard, at least one separate sheet of thin, transparent plastic material disposed over a face of the backing cardboard and secured to said backing cardboard along contacting faces of said cardboard and plastic sheets, said plastic sheet being outwardly distorted at intervals to produce a plurality of vertically alined relatively deep, substantially rectangular recesses open at the back, each recess including side walls and end walls of substantial depth and a substantially imperforate front wall and being closed at the back by said flat cardboard to form a pocket, the distance between said front wall and said cardboard being such as to maintain said eyeglasses in an erect display position in said pocket, one of the end walls having an opening through which the eyeglasses can be passed to insert them into or remove them from said pocket."

4. Atlantic Plastics, Inc. v. Henry Hanger & Display Fixture Corporation of America, 2d Cir., 1962, 305 F.2d 100; Hutchin-

manifestation of a coruscant inventive genius,[5] nor the cunning product of a plodding expenditure of toil and sweat.[6] Nothing is to be found which at the threshold of the space age [7] adds up to more than the routine neatness and inviting merchantability of what one would expect an artisan, skilled in his trade, but no more, to contrive as a solution for mechanical problems neither complex [8] nor, in any sense, presenting an engineering challenge that the years before the present have passed unmet.[9]

Comptone's inventor Nadel did not testify. Jacques, its accountant-cum-secretary-treasurer whose lack of expertise was only too apparent, explained the need the "invention" filled. Earlier the article to be exhibited—in this instance sunglasses—had customarily been attached to a cardboard backing, thus exposed to dust and pilferage. The invention consisted of a receptacle attached in no remarkable fashion to the cardboard by glue and staples. The recep-

tacle shaped to accommodate in a loose fit the glasses to be displayed was manufactured from a plastic which was transparent so that the vended article might be seen by the interested customer and which was malleable so that a number of receptacles might be expressed from a single sheet. A hole at one side gave access to the receptacle. It would be a work of supererogation to examine the prior art in a studious effort to demonstrate that plaintiff's invention represents nothing new, nothing save that which is obvious.[10] Defendant, analyzing the device into its components, professes to find in the prior art anticipation of all elements, and triumphantly proclaims the whole as no greater than the sum of its parts. It is but an aggregation [11] forming no sufficient basis for the issuance of a patent. Plaintiff counters with the contention that here we have no mere totalization of elements torn out of the context of prior disparate inventions, but rather a combination of ele-

son Mfg. Co. v. Mayrath, 192 F.2d 110 (10th Cir., 1951) cert. denied 343 U.S. 914, 72 S.Ct. 647, 96 L.Ed. 1329 (1952); Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941).

5. Vermont Structural Slate Co., Inc. v. Tatko Bros. Slate Co., 233 F.2d 9 (2d Cir., 1956) cert. denied 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123 (1956); Cuno Engineering Corp. v. Automatic Devices Corp., footnote 4 supra; Great Atlantic & Pacific Tea Co. v. Super Market Equipment Corp., 340 U.S. 147, 154, 71 S.Ct. 127, 95 L.Ed. 162 (1950).

6. Reiner v. I. Leon Co., 285 F.2d 501, 503 (2d Cir., 1960) cert. denied 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388 (1961) rehearing denied 366 U.S. 978, 81 S.Ct. 1918, 6 L.Ed.2d 1268 (1961); Lyon v. Bausch & Lomb Optical Co., 224 F.2d 530 (2d Cir., 1955) cert. denied 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799 (1956) rehearing denied 350 U.S. 955, 76 S.Ct. 341, 100 L.Ed. 831 (1956).

7. Atlantic Works v. Brady, 107 U.S. 192, 199, 2 S.Ct. 225, 27 L.Ed. 438 (1882).

8. Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945); Wilson Athletic Goods Mfg. Co. v. Kennedy Sporting Goods Mfg. Co., 233 F.2d 280, 283 (2d

Cir., 1956); E. J. Brooks Company v. Stoffel Seals Corporation, 266 F.2d 841, 843 (2d Cir., 1959) cert. denied 361 U.S. 883, 80 S.Ct. 154, 4 L.Ed.2d 119 (1959).

9. Johnson & Johnson v. C. B. Stenvall, Inc., 193 F.Supp. 128, 134 (S.D.N.Y. 1961); Carbide & Carbon Chemicals Corporation v. Coe, 69 App.D.C. 372, 102 F.2d 236, 241 (1938); Patterson-Ballagh Corp. v. Moss, 201 F.2d 403, 406 (9th Cir., 1953).

10. It is unnecessary to extract, as does defendant, in its pre-trial memorandum a single component from each of one or more of the prior art references and to synthesize these into a whole claimed to constitute plaintiff's invention. It is sufficient that the earlier patents illustrate and thereby establish the lack of invention in a prosaic use for display purposes of pockets made of transparent material to permit of inspection of the article exhibited and of such size and shape as conveniently to accommodate it.

11. Lorenz v. F. W. Woolworth Co., 2d Cir., 1962, 305 F.2d 102; Great Atlantic & Pacific Tea Co. v. Super Market Equipment Corp., footnote 5 supra, 340 U.S. at pp. 151–152, 71 S.Ct. 127; Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 549–550, 58 S.Ct. 662, 82 L.Ed. 1008 (1938).

ments, previously known, which in their summation produce something new which goes so far beyond what was earlier known that it qualifies as invention.[12]

Additionally, plaintiff cites, not too persuasively, the commercial success of the item as proof of the industry's need and as recognition that the need has now been met.[13] Finally, with monotonous iteration plaintiff stresses the presumption of validity which the Patent law declares.[14] Ringing the changes on this theme, plaintiff argues strenuously that the presumption is strengthened by defendant's failure to cite prior art beyond that considered by the Patent Office as basis for its favorable action;[15] further, that defendant's failure to introduce countervailing proof and, in particular, expert testimony, is in effect tantamount to defendant's default upon the trial.[16]

The principles plaintiff cites are unexceptionable as principles, but it is the application of these principles to the case at bar which defeats the plaintiff. Among the numerous cases plaintiff lists in support are found a fair percentage that make a determination which notes the rule only to distinguish it from the matter sub jud.[17] The line of demarcation is drawn between cases that are close and those that are not. In the one instance the presumption or relevant principle may constitute the marginal makeweight in favor of validity. In the other they are noted only to be held inapplicable. They cannot prop up a patent which is moribund for want of invention.[18] For a like reason they do not avail plaintiff here.

Defendant's application for attorney fees is denied, no sufficient showing having been made to bring the case within the scope of the applicable provision of the Patent Law.[19]

Settle judgment on five days' notice.

12. Landon, Inc. v. Marine Swimming Pool Equipment Co., 195 F.Supp. 41, 42 (S.D. Cal.1961); Upjohn Company v. Italian Drugs Importing Co., 190 F.Supp. 361, 365 (S.D.N.Y.1961); Firestone v. Aluminum Company of America, 285 F.2d 928, 930 (6th Cir. 1960).

13. Reiner v. I. Leon Co., footnote 6 supra, 285 F.2d at p. 503; Hayes Spray Gun Company v. E. C. Brown Company, 291 F.2d 319, 322 (9th Cir., 1961); General Tire & Rubber Company v. Watson, 184 F.Supp. 344, 349 (D.C.D.C.1960).

14. 35 U.S.C. § 282
"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

15. Manville Boiler Co. v. Columbia Boiler Co., 269 F.2d 600, 604 (4th Cir., 1959) cert. denied 361 U.S. 901, 80 S.Ct. 208, 4 L.Ed.2d 156 (1959); S. H. Kress & Co. v. Aghnides, 246 F.2d 718 (4th Cir., 1957) cert. denied 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 189 (1957); Eversharp, Inc. v. Fisher Pen Co., Inc., 204 F.Supp. 649 (N.D.Ill.1961).

16. Lyon v. Bausch & Lomb Optical Co., 119 F.Supp. 42, 45 (W.D.N.Y.1953) aff'd. 224 F.2d 530 (2d Cir., 1955) cert. denied 350 U.S. 955, 76 S.Ct. 341, 100 L.Ed. 831 (1956); Celanese Corporation of America v. Essley Shirt Co., 98 F.2d 895, 896 (2d Cir., 1938) cert. dismissed 307 U.S. 649, 59 S.Ct. 836, 83 L.Ed. 1528 (1939).

17. Thus re commercial success alone as being insufficient see Wilson Athletic Goods Mfg. Co. v. Kennedy Sporting Goods Mfg. Co., footnote 8 supra, 233 F.2d at p. 284; Welsh Manufacturing Co. v. Sunware Products Co., 236 F.2d 225, 227–228 (2d Cir., 1956); re defendant's failure to cite prior art beyond the Patent Office's references as not precluding invalidity, see Consolidated Electrodynamics Corporation v. Midwestern Instruments, Inc., 260 F.2d 811, 815 (10th Cir., 1958); Admiral Corporation v. Zenith Radio Corporation, 296 F.2d 708, 712 (10th Cir., 1961); re fact that expert testimony need not be introduced by defendant where the device in question is a simple one, see Vermont Structural Slate Co., Inc. v. Tatko Brothers Slate Co., footnote 5 supra; George P. Converse & Co. v. Polaroid Corp., 242 F.2d 116 (1st Cir., 1957).

18. United Mattress Machinery Co. v. Handy Button Machine Co., 207 F.2d 1 (3d Cir., 1953); Wilson Athletic Goods Mfg. Co. v. Kennedy Sporting Goods Mfg. Co., footnote 8 supra.

19. 35 U.S.C. § 285—"Attorney fees. The court in exceptional cases may award reasonable attorney fees to the prevailing party."